AMÉRICA DUPREY LÓPEZ, Plaintiff and Appellant, *v.* MÉNDEZ BROTHERS & Co., LTD., Defendants and Appellees.

No. 4206. Argued January 18, 1928.—Decided January 21, 1929.

*J. Teridor* and *D. Pellon* for the appellant. *González Fagundo & González Jr.* for the appellees.

Mr. Justice Hutchison delivered the opinion of the court.

In April, 1924, a district health officer notified Carlos González, the sublessee of a bakery, that the local health office would not issue a license for the use of the bakery until it was reconstructed in accordance with number 73 of the Bakery Regulations.

On April 7th González referred this communication to Méndez Brothers & Company as lessees. On April 8th Méndez Brothers & Company sent a copy of the letter to the Roig Commercial Bank, through which, as agent of the lessor, the monthly rental had been paid. At the same time Méndez Brothers & Company informed the bank that by the terms of the second clause contained in the agreement of lease the lessees would be relieved from the payment of rent during such time as the bakery might remain closed.

On the following day the bank informed the lessees that its authority was limited to the collection of rentals, but

stated that a letter would be written to the lessor in order that she might decide the question.

In December, 1924, the lessor brought an action for rescission of the agreement of lease, for rent and for damages.

Plaintiff appeals from a judgment of dismissal rendered in December, 1926, and says that the court below erred:

First, in not attaching importance to the fact disclosed by the evidence that the gallery, which had been ordered destroyed by the health authorities, was there and the lessees knew it was there before the date of the contract;

Second, in finding that the health authorities had ordered the closing of the bakery;

Third, in construing the second and fourth clauses of the contract;

Fourth, in weighing the evidence as to the closing of the bakery by the health authorities, and in not holding that the bakery had never been so closed;

Fifth, in not finding that lessees were obliged to return the leased property in good condition, and that they had failed to perform such obligation; and

Sixth, in dismissing the action.

The fact that lessees may be presumed to have seen the gallery before entering into the agreement of lease was not important unless by the terms of the lease or upon some principle of law it became their duty to remove such gallery in order to meet the demands of the health authorities. The court below did not proceed upon that theory.

The evidence shows that the bakery was used only on certain occasions, under a temporary license obtained for that purpose and that without such license it could not be so used.

The court below conceded that the bakery had not been closed in any technical sense, for the reason that no order to that effect had been issued. But it also held that the refusal to issue a license was practically equivalent to the closing of the bakery, because the result was the same. In

this we find no error. The trial judge likewise construed the word "closing" as having been used in a broader sense than that contended for by plaintiff, and in this view we also concur.

The third question will be discussed later. The fourth is in substance a restatement in different form of the second.

As pointed out in the brief for appellant, the lessees up to the time of the trial had not delivered the leased property at all. Nor were they under any obligation to deliver it before the expiration of their contract. The contract had not expired when lessees claimed a right to the suspension of payment of rent during such period as the bakery might remain closed. If that right existed there was no breach of the contract, nor of an obligation to return the property in good condition upon termination of the lease.

The second and fourth clauses of the contract read as follows:

"SECOND.—The lessee partnership shall care for the building and machinery like a good father of a family and shall be responsible for any breakage or damage which the said machinery may suffer, all repairs or cleaning ordered by .the health authorities to be for the account of the lessees, excepting those that according to new laws of the Health Department may require great modifications or expenses. If, as a consequence of such modifications or repairs, the building is closed, the lessee partnership shall pay no rent as long as the building remains closed, but if the building be closed due to the guilt or negligence of the said lessee partnership it shall not be relieved of the payment of rent."

"FOURTH.—Mrs. Duprey does not agree to do any work or make any repairs during the term of the lease, excepting those that may be necessary due to the damages caused by *vis major*."

These two clauses must be construed together, and both in the light of the code provision in regard to the obligation of lessor and lessee.

In the absence of stipulation to the contrary, the lessor is obliged to make on the leased property "all the necessary repairs in order to preserve it in condition to serve for the

purpose to which it was destined." Civil Code, sec. 1457. Section 1461 reads in part as follows:

"If, during the lease, it be necessary to make any urgent repairs in the thing leased which can not be postponed until the expiration thereof, the lessee shall be obliged to permit the work, even though it be very annoying to him, and even if during such repairs he may be deprived of a part of the estate.

"If the repairs should last more than forty days, the price of the lease shall be reduced in proportion to the time and to the part of the estate of which the lessee is deprived."

If a demand, under existing law, for reconstruction of the bakery building was not within the contemplation of the contracting parties, and for that reason was not included in the terms of the agreement, then the respective rights and obligations of lessor and lessees must be determined in accordance with the provisions of the Civil Code.

The exemption contained in the fourth clause may be regarded as qualified to the extent of any implied obligation arising out of the provisions contained in the second clause. But, even otherwise, the two clauses are not incompatible.

If the lessor was under no obligation to reconstruct the building in accordance with the requirements of the health authorities, it is equally clear that lessees were likewise exempted from that obligation. The lessees, also, were to be relieved from the payment of rental during such time as the bakery might be closed for repairs or for radical modifications. This stipulation manifestly contemplates a closing of the bakery by the health authorities as well as a voluntary cessation of business. The lessor, therefore, might have been justified in refusing to reconstruct the building, but she could not collect rent for the time that the bakery remained closed because the health authorities refused to issue a license. Nor could she demand the rescission of the contract because lessees refused to pay such rental.

The dominant thought in the reservation in the first part of the second clause is an exemption from the obligation of

making expensive alterations upon demand of the health authorities. The possibility that they might require a reconstruction of the building under the law in force at the time of the contract does not seem to have been in the minds of the parties. The wording of this exemption must be considered in connection with the further exemption from liability for rent which is the gist of the next sentence in the same clause. This double exemption points to the existence of an implied obligation on the part of the lessor to make major modifications as a condition precedent to the collection of rent in certain circumstances. Such a construction is in accordance with the spirit of the second clause as a whole and also of section 1457 of the Civil Code.

The court below did not err in construing the agreement of lease.

The sixth and last question raised by the assignment of errors is submitted by appellant on the argument adduced in support of the preceding five. The case turns primarily on the construction of the second and fourth clauses of the contract, and a discussion of certain minor details disclosed by the evidence and outlined in the briefs would not lead to a different conclusion.

The judgment appealed from must be affirmed.

Mr. Justice Texidor took no part in the decision of this case.